## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| BVS, INC., | ‖ | |
| Plaintiff, | ‖ | No. 16-CV-0065-LTS |
| vs. | ‖ | **ORDER** |
| RHUB COMMUNICATIONS, INC., | ‖ | |
| Defendant. | ‖ | |

---

### I.    INTRODUCTION

This matter is before the Court pursuant to plaintiff BVS, Inc.'s motion for leave to file an Amended Complaint.   Doc. 17.   Plaintiff originally sued defendant RHUB Communications, Inc., alleging defendant breached a contract by failing to produce a software product.   Doc. 3.   Plaintiff alleges that "[s]ubsequent to the filing of this lawsuit and the Motion to Dismiss, [defendant] failed to perform under another contract it has with BVS" and BVS therefore "wishes to amend its Complaint to assert claims for breach of contract and declaratory judgment with respect to the other agreement . . . ." Doc. 17, at 1.   Defendant filed a resistance to plaintiff's motion to amend the complaint. Doc. 22.   Defendant alleges "the amendment is futile and could not survive a Rule 12 motion to dismiss."   Doc. 22, at 2.   Neither party requested oral argument on the motion, and the Court finds argument unnecessary.

For the reasons that follow, the Court denies plaintiff's motion to amend its complaint.

## II.    PROCEDURAL HISTORY

Plaintiff filed a petition in state court alleging a breach of contract in relation to defendant's alleged failure to provide a software product for plaintiff's business.    Doc. 3.    On May 3, 2016, defendant removed the matter to this Court.    Doc. 2.    After the Court granted defendant's unresisted motion for an extension of time to file a responsive pleading, on May 24, 2016, defendant filed a motion to dismiss, or in the alternative, to change venue to the Northern District of California.    Doc. 9.    On June 7, 2016, plaintiff filed an unresisted motion for leave to conduct limited discovery and for an extension of time to respond to defendant's motion to dismiss.    Doc. 12.    On June 8, 2016, the Court granted that motion.    Doc. 14.    On September 8, 2016, plaintiff filed the instant motion for leave to file an amended complaint.    Doc. 17.    On the same day, plaintiff filed a resistance to defendant's motion to dismiss.    Doc. 18.    Defendant's motion to dismiss remains pending before the Court.

## III.    STANDARD FOR GRANTING MOTIONS TO AMEND

Federal Rule of Criminal Procedure 15 provides that leave to amend shall be freely given "when justice so requires."    FED. R. CIV. P. 15(a)(2).    Courts view motions to amend filed before the deadline set out in the scheduling order with a "liberal policy favoring amendments."    *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (citing *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1090 (N.D. Cal. 2007)); *see also Williams v. TESCO Servs., Inc.*, 719 F.3d 968, 976 (8th Cir. 2013) (describing the standard as "liberal").    "But parties do not have an absolute right to amend their pleadings, even under this liberal standard."    *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (citing *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005)); *see also Hammer*, 318 F.3d at 844 (holding that there is no right to amend pleadings).    The Rule 15(a) standard

2

is discretionary and leave should only be denied "'where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'"  *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (quoting *Hammer v. City of Osage Beach, MO*, 318 F.3d 832, 844 (8th Cir. 2003)) (internal quotation marks omitted).   See also *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557-58 (8th Cir. 2006) (holding that a court may deny a motion to amend where there was "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party.") (internal citation omitted).

## IV.   DISCUSSION

Defendant argues the Court should deny plaintiff's motion to amend because Counts II and III are futile.   Defendant argues the amended claims fail to allege facts establishing that defendant had an obligation to provide continued support services to plaintiff during the time period when plaintiff alleges defendant breached the contract.

### A.  Standard for Determining if a Claim is Futile

An amendment is futile if "'the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedures.'"  *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)).   *See also In re Senior Cottages of Am.*, LLC, 482 F.3d 997, 1001 (8th Cir. 2007) (stating that denial of leave to amend based on futility is appropriate in the face of a legal finding that the proposed complaint could not survive a Rule 12 motion).   Accordingly, this Court must determine under the Rule 12(b)(6) standard if plaintiff's proposed amended complaint "contain[s] sufficient

3

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding a motion to dismiss under Rule 12(b)(6), the Court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court need not, however, accept as true wholly conclusory allegations. *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999). Nor is the Court obligated to accept legal conclusions drawn by a party from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

### B. The Allegations in the Proposed Claims

To resolve this issue, the Court must first review Counts II and III of plaintiff's proposed amended complaint. Plaintiff alleges that "[o]n or about January 17, 2014 and March 17, 2014, [plaintiff] entered into written contracts with [defendant] for the delivery and maintenance of certain servers and software." Doc. 17-1, ¶6. Plaintiff refers to these as the so-called "Server Agreements," and so for ease of reference will the Court. Plaintiff attached the Server Agreements as Exhibits 1 and 2.

Exhibit 1 consists of two pages. The first page of Exhibit 1 is entitled a purchase order, dated January 17, 2014, reflecting the purchase of one unit of a "TM-600." The purchase order contains other provisions. One provision states "title to the products shall pass to [plaintiff] only when the products are received by [plaintiff] . . . ." There are also provisions regarding "warranty," "returns or credits" for "[n]onconforming or defective products," "law," "arbitration," and other "general" provisions. The second page is an invoice on defendant's letter head, dated January 28, 2014, reflecting a bill for approximately $5,500 for the TM-600.

4

Exhibit 2 also consists of two pages.   Again, the first page is a purchase order, this one dated March 4, 2014, for a number of items, including a TM-1000 HAC.   This purchase order is, other than the date and description of the product ordered, identical to the January 17, 2014, purchase order in all material respects.   The second page is an invoice tied to the purchase order.   This invoice is, other than the date and dollar amount, identical to the January 28, 2014, invoice in all material respects.

Plaintiff further alleges that "[a]s part of the Server Agreements, [defendant] agreed to provide software updates and technical support for the [defendant's] servers and software in exchange for BVS paying an annual maintenance fee."   Doc. 17-1, ¶7. Plaintiff alleges that "[s]ince entering into the Server Agreements in January and March of 2014, [plaintiff] has continued to pay [defendant] the annual fee for ongoing updates and support."   Doc. 17-1, ¶16.   Plaintiff alleges, however, that "[a]lthough [plaintiff] has continued to pay [defendant] for updates and support, in July 2016 [defendant] breached the agreements by refusing to support [plaintiff] after [plaintiff] specifically sought help."   Doc. 17-1, ¶17.   Plaintiff alleges this constituted a breach of the Server Agreements.   Doc. 17-1, ¶18.

In Count III, plaintiff alleges defendant "has refused to perform its ongoing support obligations under the Server Agreements, apparently believing that [plaintiff's] initial lawsuit [against defendant] somehow absolved [defendant] of its obligation to perform under the Server Agreements."   Doc. 17-1, ¶22.   Plaintiff therefore asks the Court to declare that defendant is obligated to perform its ongoing support obligations under the Server Agreements.   Doc. 17-1, ¶23.

### C. Analysis

Plaintiff's proposed Count II and III are futile as drafted.   The claims simply do not contain sufficient facts to state a claim.   The conclusory allegations in the proposed

claims that defendant had an ongoing service obligation are not supported by and are inconsistent with the Server Agreements that plaintiff claim factually establish such an obligation.   To state a breach of contract claim under Iowa law, plaintiff must allege: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that plaintiff performed all of the terms and conditions required of it under the contract; (4) the defendant breached the contract; and (5) plaintiff suffered damages.   *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998).   Plaintiffs' proposed Counts II and III fail to allege facts which would establish the second element: that is, the proposed counts fail to articulate terms and conditions of the contract.

The body of Counts II and III fail to state facts setting forth what continuing obligation defendant owed to plaintiff or how defendant breached that obligation other than the vague allegation that defendant refused to "help" plaintiff when plaintiff ask for help.   The Server Agreements themselves, attached to the proposed complaint, do no more to establish the terms and conditions of the contract beyond the purchase and deliver of a product.   The Server Agreements, which consist of purchase orders and invoices, speak in terms of products, not services.   Nowhere in the documents do they reflect defendant had an ongoing performance obligation.   The documents do not describe what it is exactly that defendant is supposed to do for plaintiff, during what time period, in what manner.   Indeed, Count II vaguely alleges that defendant breached the Server Agreements "by refusing to support [plaintiff] after [plaintiff] specifically sought help." Doc. 17-1, ¶17.   Count II fails to describe what help or support plaintiff sought.   Count II fails to identify where in the "Server Agreements" there is language that could factually support a claim that defendant was obligated provide support to plaintiff.   Although plaintiff alleges that "[a]s part of the Server Agreements, [defendant] agreed to provide software updates and technical support for the [defendant's] servers and software in exchange for BVS paying an annual maintenance fee," (Doc. 17-1, ¶7), there is nothing

about a performance obligation or annual fee in the documents that plaintiff represents constitute the agreements between the parties.   The insufficiency of the pleadings is most starkly apparent when the Court contemplates Count III.   There, plaintiff asks the Court to declare defendant is obligated to perform its ongoing support obligations under the Server Agreements.   The Court would not have a clue from plaintiff's complaint or the attached Server Agreements just what ongoing support obligations defendant is obligated to perform.

Perhaps there are other documents or materials that reflect an ongoing performance obligation by defendant and an annual fee payment requirement by plaintiff. If so, the proposed amended complaint does not say so, or attach and incorporate them. Perhaps a "TM-600" is a term of art in the industry that somehow incorporates such performance obligations by the parties.   Perhaps a purchase order for a TM-600 is akin, for example, to a purchase order for 600 hours of technical support.   But, if documents exist to explain the meaning of the terms of art, the proposed Counts II and III fail to reflect those obligations, and there is nothing this Court can do to read such obligations into the counts as pled.

## V.   MAGISTRATE JUDGE'S AUTHORITY

Although neither party has raised the issue, the Court finds it appropriate to address its authority to enter this order, as opposed to issuing a Report and Recommendation to the District Court.   A magistrate judge may not enter a final ruling on dispositive motions, pursuant to the authority conferred in Title 28, United States Code, Section 636(b)(1).   Although there is some dispute among the federal courts as to whether a motion to amend a complaint is a dispositive motion or a nondispositive motion, "[t]he weight of authority holds that motions to amend pleadings are non-dispositive matters which may be referred to a magistrate judge and reviewed by the district court

under the 'clearly erroneous standard.'" *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 652 n.1 (N.D. Ga. 2008) (internal citation omitted). *See*, *e.g.*, *Reeves v. DSI Sec. Servs., Inc.*, 395 Fed. App'x 544, 548 (11th Cir. 2010) ("A district court may also designate a magistrate judge to rule on certain non-dispositive pretrial motions, such as a motion to amend a complaint."); *Palmore v. Hicks*, 383 Fed. App'x 897, 899-900 (11th Cir. 2010) ("An order disposing of a motion to amend is a non-dispositive pretrial ruling.") (citing cases); *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006) ("The district judge correctly held that the magistrate judge's denial of Hall's motion to amend his complaint was nondispositive, subject only to review for clear error."); *Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 660 (7th Cir. 1998) (acknowledging magistrate judge was authorized to rule on motion for leave to file third amended complaint); *Morrissey v. ASD Shared Servs., LLC*, 1:12-CV-4345-CAP-AJB, 2013 WL 11330647, at *2 n.2 (N.D. Ga. Sept. 3, 2013) (holding that a motion to amend a complaint is not a dispositive motion); *Knox v. Rhodes*, No. 08-cv-277-JPG, 2010 WL 1444875, at *1 (S.D. Ill. April 9, 2010) (same); *Wilson v. City of N.Y.*, No. 06–CV–229 (ARR)(VVP), 2008 WL 1909212, at *3–4 (E.D. N.Y. Apr. 30, 2008) (same and collecting cases). Further, nowhere in Federal Rule of Civil Procedure 72(a), and Local Rule 72.1, is it expressed or implied that magistrate judges are without authority to deny leave to amend a complaint. *See also United States v. Brunsman*, Nos. 1:11–cr–014, 1:13–cv–120, 2013 WL 3867233, at *1 (S.D. Ohio July 25, 2013) (holding that magistrate judge did not act *ultra vires* in denying a motion to amend).

Accordingly, the undersigned concludes that a magistrate judge has authority to rule on a motion to amend a complaint and therefore resolves plaintiff's motion for leave to amend by order.

## VI.    CONCLUSION

For the reasons set forth above, the Court **denies** plaintiff's motion for leave to file an amended complaint (Doc. 17).

**IT IS SO ORDERED** this 29th day of September, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa

9